27 August 1999

NO. 5-97-1005

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

MORRIS B. CHAPMAN & ASSOCIATES, )  Appeal from the

LTD., )  Circuit Court of

)  Madison County.

     Plaintiff-Appellant and Cross-Appellee, )

)

v. )  No. 93-MR-375

)

JOHN KITZMAN and EDNA KITZMAN, )  Honorable

)  Ann Callis,

     Defendants-Appellees and Cross-Appellants. )  Judge, presiding.

________________________________________________________________________

REPLACES WITHDRAWN ORIGINAL OPINION (2 FEBRUARY 1999)

JUSTICE KUEHN delivered the opinion of the court:

John W. Kitzman III died in an industrial accident.  His wife, Karen, hired 
Morris B. Chapman & Associates, Ltd. (Chapman), to pursue a wrongful death action.  Karen agreed to pay Chapman one-third of any recovery.  Chapman recovered $800,000 but was only paid $227,040.  This action ensued. 

The lawsuit filed on behalf of Karen in Missouri named Karen and decedent's parents, John and Edna Kitzman, as his heirs.  Chapman obtained an $800,000 settlement for the benefit of those heirs, prepared a petition for settlement approval, and noticed a hearing. 

A few days prior to the Missouri trial court's hearing on the petition, John and Edna retained separate counsel, attorney John A. Kilo.  They agreed to pay Kilo one-third of their recovery in excess of $100,000.  John and Edna intervened and participated in the settlement approval and apportionment hearing.  

After the apportionment hearing, the Missouri trial court entered an order distributing 86% of the settlement ($688,000) to Karen and 7% ($56,000) each to John and Edna.  It further ordered that Chapman's fee would consist of one-third of Karen's share ($227,040) only, while Kilo would receive one-third of John's and Edna's share over $100,000 ($4,000). The Missouri trial court based its fee apportionment on section 537.095(4)(2) of the Missouri Revised Statutes, which requires a trial court to order the claimant:

"To deduct and pay the expenses of recovery and collection of the judgment and the attorneys' fees as contracted, or if there is no contract, or if the party sharing in the proceeds has no attorney representing him before the rendition of any judgment or settlement, then the court may award the attorney who represents the original plaintiff such fee for his services, from such persons sharing in the proceeds, as the court deems fair and equitable under the circumstances."  Mo. Rev. Stat. §537.095.4(2) (1986).

The Missouri trial court stated that this provision required it to apportion attorney fees according to the existing contingency contracts for the following reason:  "Once separate counsel appear for competing claimants, the statutory language directing payment of attorney's fees 'as contracted' must be given full effect."    

Chapman filed the instant action in Madison County Circuit Court, seeking additional attorney fees from defendants, John and Edna Kitzman.  Chapman's complaint originally consisted of a single 
quantum meruit
 count but was later amended to include a second count based upon the common-fund doctrine.  The circuit court disposed of the action in an order that:                      

● granted Chapman's oral motion to dismiss count I. 

● granted defendants' motion to dismiss count II grounded on the common-fund doctrine's inapplicability to this case.  

● denied defendants'  motion to dismiss both counts based upon the full faith and credit clause of the United States Constitution (U.S. Const., art. IV, §1).

● denied defendants' motion for sanctions seeking attorney fees pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137).

● denied Chapman's summary judgment motion, including Chapman's argument that a judge, rather than a jury, must decide a common-fund-doctrine case.  

On appeal, Chapman attacks the circuit court's dismissal of count II and its decision that a common-fund-doctrine action may be tried to a jury.  Defendants cross-appeal the circuit court's denial of their dismissal motion under the full faith and credit clause and the denial of their motion for sanctions.  

We first address defendants' argument that the circuit court erred in denying their motion to dismiss both counts.  Specifically, defendants contend that the full faith and credit clause of the United States Constitution bars this action because the Missouri trial court's fee-

apportionment order is 
res judicata
 as to Chapman's claim.  This contention presents a disputed question of law that we review 
de novo
.  See 
Statler v. Catalano
, 293 Ill. App. 3d 483, 485-86, 691 N.E.2d 384, 386 (1997).  

"The full faith and credit clause of the United States Constitution [citation] generally requires every State to give a foreign judgment at least the 
res judicata
 effect which the judgment would be accorded in the State which rendered it."  
Pfaff v. Chrysler Corp.
, 208 Ill. App. 3d 910, 922, 567 N.E.2d 52, 60 (1991), 
aff’d
, 155 Ill. 2d 35, 610 N.E.2d 51 (1992).  Thus, we must apply Missouri law in determining whether the Missouri trial court's order is 
res judicata
 as to the claim before us.

In Missouri, the 
res judicata
 doctrine bars a claim only if the following elements are satisfied:  (1) the identity of the thing sued for, (2) the identity of the cause of action, (3) the identity of the parties to the action, and (4) the identity of the quality of the person for or against whom the claim is made.  See 
State of Missouri ex rel. Sanders v. Martin
, 945 S.W.2d 641, 642 (Mo. Ct. App. 1997).  Our 
res judicata 
analysis turns on the third element.  Facing an attorney-fees dispute arising from a wrongful death action, the Missouri appellate court explained that attorneys seeking fees are not parties to a suit: 

"The problem with the trial court's ruling is that the attorneys were not parties to the underlying litigation.  Res judicata bars only claims by parties and privies.  Attorneys claiming a portion of a party's fee have not previously been held to be in privity with their clients.  The concept of privity for purposes of res judicata connotes interests so closely related that the party sought to be barred may be said to have had a day in court.  The interest of an attorney with regard to a fee claim is not of this character."  
Floyd v. Shaw
, 830 S.W.2d 564, 565 (Mo. Ct. App. 1992).

Consequently, the case before us lacks an identity of parties with the underlying Missouri wrongful death action
.

Defendants nevertheless claim that, though technically not a party to the underlying litigation, Chapman was an "actual interested party" with respect to the attorney-fees issue.  Chapman was the petitioner for fees and had an opportunity to be heard.  Thus, defendants argue, Chapman could have assailed the fee apportionment in the Missouri appellate court but may not attack it in an independent Illinois action.  This contention is unsupported.

Missouri law does not allow a law firm to independently appeal the amount of an attorney-fees award:

"The right to appeal is purely statutory.  [Citations.]  Section 512.020 provides that any 'party to a suit aggrieved by any judgment of any trial court in any civil case ... may take his appeal to a court having appellate jurisdiction.'  By its express terms, the statute limits appeals; only a 'party to a suit' may appeal.  The firm was not a party.  Therefore, the firm has no statutory right to appeal."  
Oberhellmann v. Oberhellmann
, 950 S.W.2d 487, 488 (Mo. Ct. App. 1997). 

Similarly, appellate review of a Missouri wrongful death settlement distribution order must be sought pursuant to section 512.020 of the Missouri Code of Civil Procedure (Mo. Rev. Stat. §512.020 (1986)).  Although Chapman addressed the attorney-fees issue while representing Karen in the settlement-distribution hearing, it still had no statutory right to appeal the fee apportionment because it was not a party to the suit.  The only persons with standing to appeal were Karen and defendants, none of whom were aggrieved by the fee apportionment.  The simple fact remains that, without an identity of parties, we cannot give full faith and credit to the Missouri trial court's fee-apportionment order.  Therefore, we affirm the circuit court's denial of defendants' motion to dismiss both counts.

Likewise, observing that defendants' sanctions motion was predominantly based upon this same argument, we affirm the circuit court's denial of that motion.  "The purpose of Rule 137 is to penalize litigants who plead frivolous or false matters or bring suit without any basis in the law."  
Fischer v. Brombolich
, 246 Ill. App. 3d 660, 664, 616 N.E.2d 743, 745 (1993).  The allowance of fees and expenses under this rule is within the trial court's discretion and will not be disturbed on appeal absent an abuse of discretion.  See 
Fischer
, 246 Ill. App. 3d at 664, 616 N.E.2d at 745-46.  "A trial court exceeds its discretion only where no reasonable person would take the view adopted by it."  
Fischer
, 246 Ill. App. 3d at 664, 616 N.E.2d at 746.  On the record before us, we conclude that a reasonable decision-

maker could deny defendants' motion for sanctions.     

We now turn to the merits of Chapman's appeal.  Chapman contends that the circuit court erred in granting defendants' motion to dismiss count II of its complaint.  Defendants' motion raised a conflict-of-laws issue, claiming that Missouri law should be applied because "[t]he situs of the incident which is the basis of this suit occurred in the [S]tate of Missouri ***."  Specifically, defendants argued that count II failed to state a cause of action under Missouri substantive law because section 537.095 renders the common-fund doctrine inapplicable to attorney-fees claims in wrongful death cases.  Alternatively, defendants urged that, even if Illinois substantive law applied, count II still failed to state a cause of action because the common-fund doctrine's limited application would not extend to these facts and, furthermore, recovery under the fund doctrine otherwise was barred because they were unwilling recipients of Chapman's legal services. 

Before we examine count II's sufficiency under Illinois procedural law (see 
Velle Transcendental Research Ass'n v. Esquire, Inc.
, 41 Ill. App. 3d 799, 803, 354 N.E.2d 622, 626 (1976)), we must determine which jurisdiction's substantive law controls this case.  We note that the circuit court's order does not expressly indicate which State's law governs this issue.  However, this omission is inconsequential because we are not required to defer to a circuit court's choice-of-law decision; rather, our review of this question of law is 
de novo
.  See 
Malatesta v. Mitsubishi Aircraft International, Inc.
, 275 Ill. App. 3d 370, 384, 655 N.E.2d 1093, 1102 (1995).  

The conflicts law of Illinois, the forum State, controls our determination of the proper substantive law in this case.  See 
Esser v. McIntyre
, 169 Ill. 2d 292, 298, 661 N.E.2d 1138, 1141 (1996).  Illinois applies the most-significant-contacts rule embodied in the American Law Institute's second Restatement on the subject (Restatement (Second) of Conflict of Laws  (1971)).  See 
Esser
, 169 Ill. 2d at 297-98, 661 N.E.2d at 1141.  Under this approach, the law of the State with the most significant contacts controls substantive matters.  See 
Boersma v. Amoco Oil Co.
, 276 Ill. App. 3d 638, 645, 658 N.E.2d 1173, 1180 (1995).  We note that both Illinois and Missouri generally view the common-fund doctrine
 as based upon an unjust-

enrichment theory.  See 
Brundidge v. Glendale Federal Bank, F.S.B.
, 168 Ill. 2d 235, 238, 659 N.E.2d 909, 911 (1995); 
Jesser v. Mayfair Hotel, Inc.
, 360 S.W.2d 652, 661 (Mo. 1962).  Hence, our conflict-of-laws analysis is governed by section 221 of the Restatement (Second) of Conflict of Laws pertaining to restitution, as it "applies to claims, which are based neither on contract nor on tort, to recover for unjust enrichment."  Restatement (Second) of Conflict of Laws §221, Comment 
a
, at 728 (1971).

Section 221 requires that the law of the State that has "the most significant relationship to the occurrence and the parties under the principles stated in §6" controls.  Restatement (Second) of Conflict of Laws §221, at 727 (1971).  Section 6(2) of the Restatement (Second) of Conflict of Laws provides that when two or more jurisdictions have an interest in applying their law to a case, the following factors are relevant in choosing which rule of law to apply:

"(a) the needs of the interstate and international systems,  

the relevant policies of the forum, 

the relevant policies of other interested states and the relative interests of those states in the determinations of the particular issue,                                        

the protection of justified expectations,

the basic policies underlying the particular field of law,

certainty, predictability[,] and uniformity of result, and  

ease in the determination and application of the law to be applied."  Restatement (Second) of Conflict of Laws §6(2), at 10 (1971).

Section 221(2) lists several important contacts that the forum will consider in applying the principles of section 6 to determine the law applicable to an issue:

"(a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship,

the place where the benefit or enrichment was received,

the place where the act conferring the benefit or enrichment was done,

the domicil, residence, nationality, place of incorporation[,] and place of business of the parties, and

the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment."  Restatement (Second) of Conflict of Laws §221(2), at 727 (1971).

Moreover, we employ an interest-analysis approach in determining each factor's degree of significance for choice-of-law purposes:

"This approach is based on the conclusion that '[c]ontacts obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws.'  [Citations.]  Instead of a mere counting of contacts, what is therefore required is a 'consideration of the interests and public policies of potentially concerned states and a regard as to the manner and extent of such policies as they relate to the transaction in issue.'"  
Mitchell v. United Asbestos Corp.
, 100 Ill. App. 3d 485, 492-93, 426 N.E.2d 350, 355 (1981).

Guided by our decision in 
Mitchell
, we construe sections 6 and 221 together as giving rise to a three-step process for our conflict-of-laws analysis in this case:  (1) isolate the issue and define the conflict, (2) identify the policies embraced in the conflicting laws, and (3) examine the contacts of the respective jurisdictions in order to determine which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied.  See 
Mitchell
, 100 Ill. App. 3d at 494, 426 N.E.2d at 356-57; see also 
In re Estate of Barnes
, 133 Ill. App. 3d 361, 367, 478 N.E.2d 1046, 1051 (1985); 
Jones v. State Farm Mutual Automobile Insurance Co.
, 289 Ill. App. 3d 903, 918, 682 N.E.2d 238, 249 (1997).

We have already isolated the issue:  whether the common-fund doctrine is applicable to this case.  Because a conflicts analysis is only required when a difference in law will make a difference in the outcome (see 
Kramer v. Weedhopper of Utah, Inc.
, 204 Ill. App. 3d 469, 474, 562 N.E.2d 271, 274 (1990)), we initially must detect a conflict and then define it.  In Missouri, section 537.095.4(2) clearly renders the common-fund doctrine inapplicable to a Missouri wrongful death action where attorney-client contracts exist.  See 
Keene v. Wilson Refuse, Inc.
, 788 S.W.2d 324, 327 (Mo. Ct. App. 1990).  Thus, the existence of a conflict hinges upon whether the doctrine applies to the facts before us under Illinois law.

Defendants claim that Illinois law does not permit the common-fund doctrine's application to this case because it is restricted to class actions and subrogation cases.  However, this contention belies our supreme court's interpretation of Illinois law.  While "[t]he common fund doctrine is most often applied to funds recovered by subrogees [citation] and funds recovered in class action suits [citation]" (
Village of Clarendon Hills v. Mulder
, 278 Ill. App. 3d 727, 732-33, 663 N.E.2d 435, 440 (1996)), the supreme court has explained its broad scope:

"The common fund doctrine permits a party who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees. [Citation.]  It is now well established that 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'  [Citation.]  The underlying justification for reimbursing attorneys from a common fund *** is that, unless the costs of litigation are spread to the beneficiaries of the fund, they will be unjustly enriched by the attorney's efforts.  [Citations.]

The common fund doctrine is a common law rule of general application.  ***

It applies generally to all funds created, increased[,] or preserved by a party in which others have an ownership interest.  ***

* * *

*** [T]he common fund doctrine has been applied in many types of cases covering a large range of civil litigation."  
Scholtens v. Schneider
, 173 Ill. 2d 375, 385-88, 671 N.E.2d 657,  662-64 (1996).

We recognize that the first district appellate court imposes another restriction on the common-fund doctrine's application to the present case, holding that, outside of the subrogation context, a court lacks authority to award attorney fees under the doctrine absent a full, segregated fund under its control.  See 
City of Chicago v. Korshak
, 276 Ill. App. 3d 597, 602, 658 N.E.2d 1165, 1169 (1995); 
Wolff v. Ampacet Corp.
, 284 Ill. App. 3d 824, 828-

29, 673 N.E.2d 745, 748 (1996).  However, because we are not bound by other appellate court district decisions (see 
State Farm Fire & Casualty Co. v. Yapejian
, 152 Ill. 2d 533, 539, 605 N.E.2d 539, 542 (1992)), we decline to follow that holding.  

The first district appellate court grounds its holding on our supreme court's opinions in 
Hamer v. Kirk
, 64 Ill. 2d 434, 356 N.E.2d 524 (1976), and 
Hoffman v. Lehnhausen
, 48 Ill. 2d 323, 269 N.E.2d 465 (1971), as well as several appellate court decisions relying on those cases.  Noting that both 
Hamer
 and 
Hoffman
 involved circumstances where 
no
 fund was created (
Hamer
, 64 Ill. 2d at 440, 356 N.E.2d at 527; 
Hoffman
, 48 Ill. 2d at 329, 269 N.E.2d at 469), we do not believe that the supreme court has placed such a restriction on the common-fund doctrine's application.  See 
Taylor v. State Universities Retirement System
, 203 Ill. App. 3d 513, 520, 560 N.E.2d 893, 897-98 (1990).  Rather, the court permits the application of the doctrine where only part of the fund is within the control of the court.  See 
Baier v. State Farm Insurance Co.
, 66 Ill. 2d 119, 361 N.E.2d 1100 (1977).  Indeed, a court gains constructive control over such a partial fund by virtue of its 
in personam
 jurisdiction over the defendant(s).  See generally 
Client Follow-Up Co. v. Hynes
, 105 Ill. App. 3d 619, 628, 434 N.E.2d 485, 491 (1982).  Although 
Baier
 is a subrogation case, the supreme court has never indicated that the doctrine's requirements should be applied inconsistently based upon the type of case.  Therefore, we cannot impose on any case a requirement that the 
entire
 fund be under the control of the court in order for attorney fees to be awarded under the common-fund doctrine.  Instead, we must interpret Illinois law to empower a court with constructive control of a partial fund based upon 
in personam
 jurisdiction to award attorney fees under the common-fund doctrine. 

Given its general application, the common-fund doctrine applies to this case under Illinois law.  Thus, the conflict is defined:  Illinois law permits a common-fund doctrine action for attorney fees under the facts here, while Missouri law does not.  

Next, we must identify the policies inherent in these conflicting laws.  Illinois's policy behind the common-fund doctrine is the prevention of unjust enrichment.  See 
Scholtens
, 173 Ill. 2d at 385, 671 N.E.2d at 663.  Meanwhile, Missouri's policy in prohibiting that theory in this case is apparently to enforce the legislative intent of section 537.095.  See 
Keene
, 788 S.W.2d at 327. 

Finally, we must examine the relevant contacts of the respective jurisdictions.  The relationship between Chapman and defendants was centered in Illinois because any and all communication between these Illinois residents seemingly occurred in Illinois.  Moreover, Chapman's acts conferring the benefit or enrichment and defendants' receipt thereof occurred in both Illinois and Missouri, as Chapman pursued the case in a Missouri court but likely labored on the case to a large extent at its Illinois office.  Most importantly, this case is brought by an Illinois corporation against Illinois-resident defendants domiciled in this State.  Weighing these contacts, we conclude that Illinois has a superior connection with the occurrence and thus would have a superior interest in having its law applied.  

Furthermore, our decision is consistent with the modern approach to choice-of-law questions, which places the greatest importance on the forum's public policy.  See 
Maher & Associates, Inc. v. Quality Cabinets
, 267 Ill. App. 3d 69, 77, 640 N.E.2d 1000, 1006 (1994).  A State's public policy must be sought in its constitution, legislative enactments, and judicial decisions.  See 
Roanoke Agency, Inc. v. Edgar
, 101 Ill. 2d 315, 327, 461 N.E.2d 1365, 1371 (1984).  Illinois's public policy against unjust enrichment (see generally 
In re Estate of Moses
, 13 Ill. App. 3d 137, 148, 300 N.E.2d 473, 480 (1973)) bolsters our decision to apply Illinois law in this case.   

The alternative of applying Missouri law contravenes this public policy by fostering inequitable fee apportionments.  While the Missouri legislature likely intended section 537.095.4(2) to produce equitable fee apportionments, we are troubled by its practical effect.  Under this section, an attorney who creates a recovery may be subject to an inequitable attorney-fees apportionment from which that attorney cannot appeal.  It affords a trial court the discretion to award the original plaintiff's attorney a fair and equitable fee from a claimant with whom that attorney has no written contract.  But, according to the Missouri trial court, that discretion is eliminated if that claimant retains separate counsel any time before final judgment or settlement approval because the court must then apportion attorney fees "as contracted." 

The Missouri appellate court has taken notice of the circumstances that create this inherent inequity:

"There is a point at which the interests of several claimants for damages for the same wrongful death diverge.  Until there is a recovery by settlement or judgment, their interests are the same.  All want the largest recovery possible.  ***  When the money is in hand, the respective claimants become adversaries in the carving of the pie, and all are entitled to the unencumbered services of their individual counsel."  
Floyd
, 830 S.W.2d at 566.

In other words, the conflicting interests of multiple claimants at the distribution stage often necessitate the retention of individual counsel after recovery.  Under Missouri law, that retention of separate counsel by a claimant with whom the original plaintiff's attorney has no written contract will relieve him or her of any duty to pay for the attorney's services, despite the fact that the attorney's representation of the claimant's interests in a wrongful death action created a fund benefitting him or her.

The present case exemplifies this injustice.  Chapman alone handled this case for over three years and negotiated the settlement for the benefit of 
all
 heirs, including defendants.  Chapman alone represented defendants' interests in reaching the settlement agreement, garnering $800,000 for the benefit of Karen and defendants.  Yet the Missouri trial court's reading of section 537.095.4(2) required defendants to pay Chapman nothing because, 
after
 Chapman procured settlement funds, they entered into a written contract with a separate attorney to represent them in the distribution phase.  Simply put, section 537.095.4(2) 
promotes
 unjust enrichment.  Clearly, Illinois's policy of preventing unjust enrichment can only be furthered by the application of Illinois law, while the application of Missouri law would serve no worthwhile policy.

We now confront count II's sufficiency under Illinois substantive law.  Chapman basically argues that, considering the common-fund doctrine's general application, count II states a cause of action and, hence, a dismissal under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 1996)) was unwarranted.  We agree.  

Under section 2-615, a complaint is subject to dismissal if it fails to state a cause of action because of factual or legal insufficiency.  See 
Cummings v. City of Waterloo
, 289 Ill. App. 3d 474, 479, 683 N.E.2d 1222, 1225 (1997).  "If a complaint fails to set forth a legally recognized claim upon which the plaintiff can recover, the complaint is infirm because of a legal insufficiency, while a factually insufficient complaint fails to allege sufficient facts essential to the cause of action."  
Cummings
, 289 Ill. App. 3d at 479, 683 N.E.2d at 1225.  In addressing a dismissal motion under this section, the trial court must accept as true all well-pleaded facts in the complaint and all reasonable inferences drawn from these facts.  See 
Kolegas v. Heftel Broadcasting Corp.
, 154 Ill. 2d 1, 8-9, 607 N.E.2d 201, 205 (1992).  Furthermore, the court should interpret all pleadings and supporting documents in the light most favorable to the plaintiff.  See 
Kaden v. Kagann
, 260 Ill. App. 3d 256, 258, 635 N.E.2d 515, 517 (1994).  It should not dismiss the complaint for failure to state a cause of action "unless it clearly appears that no set of facts could be proven under the pleadings which would entitle the plaintiff to relief."  
Davis v. Temple
, 284 Ill. App. 3d 983, 989, 673 N.E.2d 737, 741 (1996).  On appeal, our review of the trial court's ruling on a motion to dismiss
 is 
de novo
.  See 
Cummings
, 289 Ill. App. 3d at 479, 683 N.E.2d at 1225.

To state a cause of action for attorney fees under the common-fund doctrine, an attorney must allege that (1) his or her legal services created, preserved, or increased the fund from which fees are sought, (2) the claimant of the fund did not participate in its creation, its preservation, or its growth, and (3) the claimant benefitted or will benefit from the fund.  See 
Village of Clarendon Hills
, 278 Ill. App. 3d at 732, 663 N.E.2d at 440.  Count II alleges that Chapman seeks fees from the settlement fund that its legal services created for defendants' benefit without their participation.  Accepting these factual allegations as true, Chapman sufficiently states a cause of action under the common-fund doctrine.  

Nevertheless, defendants contend on appeal that the dismissal of count II was proper because they were unwilling recipients of Chapman's legal services.  Initially raising this affirmative matter in their dismissal motion by incorporating their cross-motion for summary judgment, defendants essentially contend that count II is barred under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 1996)) because their status as unwilling recipients defeated Chapman's claim.  We disagree.

"A section 2-619 motion provides a means of disposing not only issues of law but also of easily proven issues of fact."  
Barber-Colman Co. v. A & K Midwest Insulation Co.
, 236 Ill. App. 3d 1065, 1072, 603 N.E.2d 1215, 1221 (1992).  Again, all well-pleaded facts are taken as true, and only the complaint's legal sufficiency is contested.  See 
Zimmerman v. Fasco Mills Co.
, 302 Ill. App. 3d 308, 311, 704 N.E.2d 949, 951-52 (1998).  The procedure under a section 2-619 motion is very similar to that of a summary judgment motion.  See 
Barber-Colman Co.
, 236 Ill. App. 3d at 1072, 603 N.E.2d at 1221.  The issue presented is whether a genuine issue of material fact exists precluding dismissal or, absent such an issue of material fact, whether dismissal was proper as a matter of law.  See 
Zimmerman
, 302 Ill. App. 3d at 311, 704 N.E.2d at 952.  We likewise review the granting of section 2-619 motion 
de novo
.  See 
Epstein v. Chicago Board of Education
, 178 Ill. 2d 370, 383, 687 N.E.2d 1042, 1049 (1997).

It is clear that "a plaintiff may not recover attorney fees under the doctrine while rendering services for an unwilling recipient."  
Brase v. Loempker
, 267 Ill. App. 3d 415, 419, 642 N.E.2d 202, 205 (1994).  However, it is unclear whether defendants were unwilling recipients of Chapman's legal services.  While the record does contain defendants' affidavits and deposition testimony supporting this contention, conspicuously absent from the record is evidence demonstrating that defendants decided to represent their own interests prior to settlement and affirmatively notified Chapman of that decision.  See 
McGee v. Oldham
, 267 Ill. App. 3d 396, 401, 642 N.E.2d 196, 199 (1994).  On the record before us, the question of whether defendants were unwilling recipients of Chapman's legal services is not an easily proven issue of fact.  We conclude that this genuine issue of material fact precludes dismissal.  Therefore, we reverse the circuit court's dismissal of count II.

Finally, we address the circuit court's refusal to grant summary judgment on Chapman's contention that a judge, rather than a jury, must decide a common-fund doctrine case.  Summary judgment "shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  735 ILCS 5/2-

1005(c) (West 1996).  "Thus, where the matter before the trial court can be decided as a question of law, the case is a proper one for summary judgment."  
First of America Bank, Rockford, N.A. v. Netsch
, 166 Ill. 2d 165, 176, 651 N.E.2d 1105, 1110 (1995).  "On appeal, courts review summary judgment orders 
de novo
."  
Batson v. Pinckneyville Elementary School District #50
, 294 Ill. App. 3d 832, 835, 690 N.E.2d 1077, 1078 (1998). 

The common-fund doctrine "finds its source in the court's inherent equitable powers ***."  
Brundidge v. Glendale Federal Bank, F.S.B.
, 168 Ill. 2d 235, 238, 659 N.E.2d 909, 911 (1995).  "There is no right to a jury trial in equitable proceedings or proceedings seeking equitable relief."  
Johnson v. Valspar Corp.
, 251 Ill. App. 3d 564, 569, 621 N.E.2d 999, 1005 (1993).  Indeed, the application of the common-fund doctrine is a matter within the trial court's sound discretion.  See 
In re Estate of Pfoertner
, 298 Ill. App. 3d 1134, 700 N.E.2d 438, 440 (1998). 

Like defendants' unwilling-recipient defense, the elements of Chapman's claim may raise questions of fact.  Because this action is an equitable proceeding, any such factual issues must be tried to the circuit court without a jury as a matter of law.  Therefore, we reverse the circuit court's denial of summary judgment in Chapman's favor on this issue.  

For the foregoing reasons, the judgment of the Madison County Circuit Court is affirmed in part and reversed in part, and this cause is remanded for proceedings in accordance with this opinion.

Affirmed in part and reversed in part; cause remanded.

HOPKINS and MAAG, JJ., concur.