NOTICE

Decision filed 07/25/06. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-05-0078

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

_____

| | |
|---|---|
| BARBARA'S SALES, INC., DONALD BRADDY, MICHAEL BUNDY, BUNDY & ASSOCIATES, INC., RHONDA BYINGTON, REBECCA S. CHANDLER, VERNON ANTHONY DUENAS, CHRISTOPHER R. GROUT, DEANNA L. NEUBAUER, SANDRA PYLE, and RICHARD RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated, | ) Appeal from the ) Circuit Court of ) Madison County. ) ) ) ) ) ) ) ) |
| Plaintiffs-Appellants and Appellees, | ) ) |
| v. | ) No. 02-L-788 ) |
| INTEL CORPORATION, | ) ) |
| Defendant-Appellant and Appellee, | ) ) |
| and | ) ) |
| HEWLETT-PACKARD COMPANY and HP DIRECT, INC., | ) ) Honorable ) Ralph J. Mendelsohn, |
| Defendants. | ) Judge, presiding. |

_____

_____

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiffs, Barbara's Sales, Inc., Donald Braddy, Michael Bundy, Bundy & Associates, Inc., Rhonda Byington, Rebecca S. Chandler, Vernon Anthony Duenas, Christopher R. Grout, Deanna L. Neubauer, Sandra Pyle, and Richard Rodriguez, individually and on behalf of all others similarly situated, filed a class action lawsuit in the circuit court of Madison County against Intel Corp. (Intel). Plaintiffs are

1

purchasers of computers containing Intel Pentium 4 computer processors. In their nationwide class action suit, plaintiffs alleged that Intel engaged in unfair business practices through "the omission, suppression[,] and concealment from the public of the material fact that the Pentium 4 processor does not perform to the expectations of a reasonable consumer (*i.e.*, is no faster than the Pentium III, Celeron[,] and AMD Athlon processors)." The circuit court entered a class certification order granting in part and denying in part plaintiffs' motion for class certification. Plaintiffs and Intel filed a joint motion for an interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). Hewlett-Packard Company and HP Direct, Inc., take no part in this appeal. The questions certified for appeal are (1) whether the circuit court erred in certifying a class of Illinois consumers under Illinois law rather than certifying a nationwide or Illinois class under California law as plaintiffs requested and (2) whether the circuit court erred in holding that the action should not proceed as a nationwide class action. We answer both questions in the affirmative, reverse the circuit court's decision on the choice-of-law issue, vacate the class certification, and remand with directions.

BACKGROUND

The named plaintiffs reside in Illinois or Missouri, and most purchased their computers from either Illinois or Missouri retailers. Some of the named plaintiffs purchased their computers over the telephone from Dell, which is located in Texas. However, due to the nationwide sales of computers with Pentium 4 processors, all 50 states potentially have a relationship to this litigation.

Intel is the world's largest manufacturer of microprocessors. Intel began manufacturing them in 1971, starting with the 80286 microprocessor. Since that time, Intel has manufactured the following processors, *inter alia*: 80386, i486,

2

Pentium, Pentium Pro, Pentium II, Pentium III, and Pentium 4. The title changes for the microprocessors represent advances over the previous microprocessor.

Intel's principal place of business is in California. Its headquarters, executive offices, and legal department are all located in California. Intel is incorporated under Delaware law. Intel's press relations group is located in California, and Intel launched its billion-dollar advertising campaign for its new Pentium 4 processors from California. Likewise, the group responsible for testing the performance of the Pentium 4 processors is located in California. The groups responsible for the design of the Pentium 4 processor are based in California and in Oregon.

Intel's Pentium 4 advertising campaign was based on its claim that the Pentium 4 is the highest performance processor ever developed and vastly superior to its Pentium III processor. The "Intel Inside" campaign was communicated to consumers through both television and print ads, along with the "Intel Inside" sticker that accompanied virtually every computer sold with a Pentium 4 processor. Intel's decision to designate the "Willamette" generation of processors as the Pentium 4 was made by Intel's corporate marketing group and branding strategy group, both of which are located in California. Marketing activities relating to Pentium 4 processors, including presentations at trade shows and training at retail stores, took place at local stores throughout the country.

Intel's marketing strategy was based upon ensuring a consistent message about the Pentium 4 that would cross "all forms of communication and every point of customer contact." Intel taught computer manufacturers such as Dell and Gateway and retailers such as Best Buy and CompUSA how to advertise and market computers built with Pentium 4 processors, thereby ensuring consistency in its message to consumers. Intel also sought to control independent organizations

3

responsible for testing microprocessors' performance. The testing of computer processors is called "benchmarking." Intel sought to educate the press on benchmarking and to influence consumer and technology analysts in an attempt to get them to champion the Pentium 4 processor. Internal documents reveal that Intel specifically set out to show that the Pentium 4 was the best processor to date: "The most important thing is our Brand and what it stands for. We have taught the market that four is better than three."

After purchasing computers with Pentium 4 processors, the named plaintiffs were disappointed. Plaintiffs dispute Intel's claims about the Pentium 4 being vastly superior to the Pentium III. Plaintiffs' concerns are mainly with the early version of the Pentium 4, the "Willamette" generation. Intel's own documents reveal problems with the Pentium 4. For example, Intel revealed that most benchmarks showed a negative or zero performance gain for the Pentium 4 and that the performance of the Pentium 4 was not as high as expected. These low benchmark results were not disseminated to consumers.

Plaintiffs filed a nationwide, three-count, class action lawsuit against Intel. Count I of plaintiffs' third amended complaint was filed under the California Consumers Legal Remedies Act (Cal. Civ. Code §1750 *et seq.* (West 2002)). Count II was filed under California's unfair competition law (Cal. Bus. & Prof. Code §17200 *et seq.* (West 2002)). Count III was pled as an alternative count under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2002)).

On December 16, 2002, plaintiffs filed a motion for class certification. Intel opposed plaintiffs' motion. Plaintiffs and Intel submitted briefs, stipulations, affidavits, deposition testimony, and documentary evidence on behalf of their

respective positions on the issue of class certification. On July 12, 2004, after a two-day hearing on plaintiffs' motion, the trial court entered a class certification order, granting in part and denying in part plaintiffs' motion.

First, the trial court held that California law was inapplicable. The trial court found that the question to be answered was, "Does Illinois have a legitimate interest in applying California law to adjudicate this dispute and to insure [*sic*] that California residents (Intel) comply with California consumer-protection laws while serving Illinois and out-of-state consumers?" The trial court found that Illinois does not have a legitimate interest in applying California law to adjudicate the dispute because California does not have the "most significant relationship" with this action. The trial court denied class certification for count I and count II of plaintiffs' third amended complaint. Those counts were based upon California statutes.

Second, the trial court found that Illinois law could not be applied to a nationwide class and that, thus, class certification extended only to consumers who lived in or purchased a computer with a Pentium 4 processor in Illinois. Plaintiffs and Intel both appeal from the trial court's order regarding class certification. Briefs, reply briefs, supplemental briefs, and *amicus curiae* briefs have been submitted by and in support of the parties.

ANALYSIS

We begin our analysis by first addressing plaintiffs' choice-of-law arguments. Plaintiffs assert the trial court misapplied Illinois choice-of-law principles when it held that Illinois has no interest in applying California law. According to plaintiffs, the standard is whether California has an interest in having California law applied to this dispute and whether California's interest is superior to Illinois's interest. Plaintiffs contend California law, rather than Illinois law, applies because Intel's conduct with

5

regard to the Pentium 4 processor took place in California. Plaintiffs point out, for example, that Intel named, promoted, marketed, tested, and priced the Pentium 4 processor in California.

Intel replies that California law should not be applied because a state court's application of another state's law to the claims of a nationwide class would be both unconstitutional and a "novel expansion" of choice-of-law jurisprudence. The Chamber of Commerce submitted an *amicus curiae* brief on behalf of Intel in which it asserts that, under the Restatement (Second) of Conflict of Laws (1971), when a consumer resides in a state, receives a representation there, and purchases a product there, it is that state, not the state of a defendant's principal place of business, that has the "most significant relationship" to the parties and to the transaction, and the Chamber of Commerce argues that the same choice-of-law principle applies in this nationwide class action. Intel and its supporters insist that the trial court correctly applied the Restatement choice-of-law principles in the instant case and that its decision should be affirmed.

We first point out that a circuit court's determination on a choice-of-law issue is reviewed *de novo*. *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 307 Ill. App. 3d 92, 99, 716 N.E.2d 829, 836 (1999), *aff'd*, 193 Ill. 2d 560, 739 N.E.2d 1263 (2000). In deciding which substantive law to apply, we look to our own choice-of-law rules because Illinois is the forum state. *Kitzman*, 193 Ill. 2d at 568, 739 N.E.2d at 1269. Illinois follows the Restatement (Second) of Conflict of Laws (1971) in making choice-of-law decisions. Section 221 requires that the law of the state with "the most significant relationship to the occurrence and the parties under the principles stated in [section] 6" controls. Restatement (Second) of Conflict of Laws §§221, 6 (1971).

While the trial court recognized that its analysis should be conducted pursuant

6

to section 6, it is clear to us that it did not properly apply a section 6 analysis because it did not first consider which state has the most significant relationship to the occurrence. Instead, the trial court determined that the initial question to be answered is, "Does Illinois have a legitimate interest in applying California law to adjudicate this dispute and to insure [*sic*] that California residents (Intel) comply with California consumer-protection laws while serving Illinois and out-of-state consumers?" The trial court answered this question in the negative, finding, "Illinois does not have a legitimate interest in applying California law to adjudicate this dispute." Because the trial court's analysis was fatally flawed, its order regarding class certification must be vacated and the cause remanded with the following in mind.

As previously stated, section 221 of the Restatement (Second) of Conflict of Laws (1971) requires that the law of the state that has "the most significant relationship to the occurrence and the parties under the principles stated in [section] 6 "controls. Restatement (Second) of Conflict of Laws §§221, 6 (1971). Section 6(2) sets forth that when two or more jurisdictions have an interest in applying their law to a case, the following factors are relevant in choosing which rule of law to apply:

"(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability[,] and uniformity of result, and

(g) ease in the determination and application of the law to be applied."

Restatement (Second) of Conflict of Laws §6(2) (1971).

In addition to the broad general factors found in section 6 of the Restatement, section 148(2) provides specific rules regarding the tort of fraud and misrepresentation.

"(2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider *** the following contacts *** in determining the state which *** has the most significant relationship ***:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicil, residence, nationality, place of incorporation[,] and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant."  Restatement (Second) of Conflict of Laws §148(2) (1971).

In essence, the locale with the most significant relationship with the occurrence and with the parties determines their rights and liabilities.  *Ingersoll v. Klein*, 46 Ill. 2d 42, 47, 262 N.E.2d 593, 596 (1970).  To determine the state with the most significant relationship, the forum court considers the following contacts: (1) the place where the injury occurred, (2) the place where the conduct occurred, (3) the

8

parties' domiciles, nationality, place of incorporation, and place of business, and (4) the place where the parties' relationship is centered. *Ingersoll*, 46 Ill. 2d at 47-48, 262 N.E.2d at 596.

Here, the injury to plaintiffs, in paying for a computer with a Pentium 4 processor that is allegedly no better than a Pentium III, occurred throughout the country. In reality, all 50 states and the District of Columbia bear some relationship to this litigation by virtue of the nationwide sales of computers containing Pentium 4 processors. The question is whether the relationship of each state where the computers were purchased is more significant to the parties and this litigation than that of the State of California, the principal place of business of Intel and the place where the conduct leading to the injury occurred almost exclusively. Not only is California home to Intel's headquarters, but its corporate marketing group and press relations group are located in California. The billion-dollar Intel Inside campaign was devised and launched in California. Intel's marketing strategy was based upon putting forth a consistent message, across all 50 states, to convince the public that the Pentium 4 was the best and fastest processor ever and far superior to the Pentium III.

The Intel group responsible for the design of the Pentium 4 is also located in California. In addition, Intel tested the Pentium 4 in California and disseminated many of those results, accurate or not, or chose not to disseminate those results from California. Under these circumstances, we conclude that California's interest in having its regulatory schemes applied to the conduct of Intel is most significant. California is clearly the only state where conduct relevant to all the potential class members occurred.

California law takes on added significance when the relevant factors stated in

9

section 6 of the Restatement are considered. The needs of the interstate system and the basic policies of predictability and uniformity of result require one forum with one result rather than results in 51 jurisdictions with the distinct possibility of conflicting decisions. We recognize that some of the contacts listed in section 148(2) of the Restatement clearly favor each plaintiff's home state. Likewise, we respect the interest of each home state in applying its local law. Nevertheless, as we have previously stated:

> " 'Contacts obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws.' [Citations.] Instead of a mere counting of contacts, what is therefore required is a 'consideration of the interests and public policies of potentially concerned states and a regard as to the manner and extent of such policies as they relate to the transaction in issue.' [Citations.]" *Mitchell v. United Asbestos Corp.,* 100 Ill. App. 3d 485, 493, 426 N.E.2d 350, 355 (1981).

With this in mind, we conclude that California's interest in the conduct of Intel is the most significant.

We disagree with Intel's assertions that applying California law would be unconstitutional and a novel expansion of choice-of-law jurisprudence. Our conclusion that California law is applicable is consistent with the constitutional requirement " 'that for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.' " *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818, 86 L. Ed. 2d 628, 646, 105 S. Ct. 2965, 2978 (1985) (quoting *Allstate Insurance Co. v. Hague*, 449 U.S. 302, 312-13, 66 L. Ed. 2d 521, 531, 101 S. Ct. 633, 640

(1981)). We fail to see how another state's interests, including our own, would be jeopardized by applying California law. Applying the law of Intel's home state is a sensible choice that cannot be said to be fundamentally unfair.

In support of our decision, we rely on *Martin v. Heinold Commodities, Inc.*, 117 Ill. 2d 67, 510 N.E.2d 840 (1987). In *Martin*, the Illinois Supreme Court expressly approved of applying the law of a defendant's home state in a consumer fraud action brought by a class of plaintiffs consisting of both Illinois and non-Illinois residents. The plaintiffs brought suit against an Illinois company that served as a broker for the plaintiffs in commodities transactions. The broker relationship was established by a contract that contained allegedly deceptive statements. The Illinois Supreme Court allowed the certification of both Illinois and non-Illinois plaintiffs' claims under the Illinois Consumer Fraud and Deceptive Business Practices Act. *Martin*, 117 Ill. 2d at 80-83, 510 N.E.2d at 846-47. Likewise, our decision that the law of defendant's principal place of business is applicable in this multistate class action lawsuit is neither unconstitutional nor a novel expansion of choice-of-law jurisprudence.

Our decision today should not, however, be considered a new rule requiring our courts to always apply the consumer fraud law of a foreign state to adjudicate the claims of Illinois residents for products purchased in Illinois if the defendant's place of business is outside Illinois and the alleged misconduct originated from the defendant's place of business. Today's decision is a narrow one that focuses only on the facts of the instant case. Here, after (1) isolating the issue and defining the conflict, (2) identifying the policies embraced in the conflicting laws, and (3) examining the contacts of the respective jurisdictions in order to determine which has a superior connection with the occurrence and a superior interest in having its policy or law applied (see *Kitzman*, 307 Ill. App. 3d at 101, 716 N.E.2d at 838, *aff'd*,

11

193 Ill. 2d 560, 739 N.E.2d 1263 (2000)), we conclude that California law is applicable. However, in another factual situation, this analysis might very well produce a different result.

Finally, we note that the parties submitted supplemental briefs regarding the applicability of *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 835 N.E.2d 801 (2005), to the instant case. While *Avery* is an important case in the development of class action litigation, its holdings are not relevant to the instant appeal because of our determination that California law applies. *Avery* in no way breaks with choice-of-law precedent and does not change the choice-of-law analysis to be applied.

CONCLUSION

After careful consideration, we find that the trial court failed to employ the proper analysis and misapplied our state's choice-of-law rules. We find that California has the most significant relationship to the occurrence and to the parties. California law, not Illinois law, is applicable. Accordingly, we hereby vacate the order of the circuit court of Madison County regarding class certification. We remand with directions for the circuit court to apply California substantive law and to reconsider its class certification order in light of the applicability of California law.

Certified questions answered; order vacated; cause remanded with directions.

CHAPMAN and HOPKINS, JJ., concur.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| BARBARA'S SALES, INC., DONALD BRADDY, MICHAEL BUNDY, BUNDY & ASSOCIATES, INC., RHONDA BYINGTON, REBECCA S. CHANDLER, VERNON ANTHONY DUENAS, CHRISTOPHER R. GROUT, DEANNA L. NEUBAUER, SANDRA PYLE, and RICHARD RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiffs-Appellants and Appellees, | ) ) | |
| v. | ) ) | No. 02-L-788 |
| INTEL CORPORATION, | ) ) | |
| Defendant-Appellant and Appellee, | ) ) | |
| and | ) ) | |
| HEWLETT-PACKARD COMPANY and HP DIRECT, INC., | ) ) ) | Honorable Ralph J. Mendelsohn, |
| Defendants. | ) ) | Judge, presiding. |

---

**Opinion Filed**:   July 25, 2006

---

**Justices**:   Honorable Richard P. Goldenhersh, J.

Honorable Melissa A. Chapman, J., and
Honorable Terrence J. Hopkins, J.,
Concur

---

**Attorneys for Appellants**   Stephen M. Tillery, Aaron M. Zigler, Korein Tillery, Gateway One on the Mall, 701 Market Street, Suite 300, Saint Louis, MO 63101; Stephen A. Swedlow, Robert L. King, Swedlow & King, LLC, Three First National Plaza, 70 West Madison Street, Suite 660, Chicago, IL 60603 (for Barbara's Sales, Inc., etc.)

Edward M. Crane, R. Ryan Stoll, Gregory S. Bailey, Skadden, Arps, Slate, Meagher & Flom, LLP, 333 West Wacker Drive, Suite 2100, Chicago, IL 60606; Gordon R. Broom, Troy A. Bozarth, Wayne D. Skigen, Burroughs, Hepler, Broom, MacDonald, Hebrank & True, LLP, Two Mark Twain Plaza, Suite 300, 103 West Vandalia Street, Edwardsville, IL 62025-0510; Terry E. Fenzl, Anthony L. Marks, Timothy J. Franks, Dan L. Bagatell, Perkins Coie Brown & Bain, P.A., 2901 N. Central Avenue, Suite

2000, Phoeniz, AZ 85012-2788 (for Intel Corporation)

| | |
|---|---|
| **Attorneys for Appellees** | Russell K. Scott, Greensfelder, Hemker & Gale, 12 Wolf Creek Drive, Swansea, IL 62226; John Schultz, Morgan, Lewis & Bockius, L.L.P., 1701 Market Street, Philadelphia, PA 19103 (for Hewlett-Packard Co. and HP Direct, Inc.; not a party to appeal; no brief filed) |
| **Attorneys for** *Amicus Curiae* | Robert J. Sprague, Sprague & Urban, 26 E. Washington Street, Belleville, IL 62220-2101; Stephen C. Mudge, Reed, Armstrong, Gorman, Mudge & Morrissey, P.C., 115 North Buchanan, P.O. Box 368, Edwardsville, IL 62025 |

————