BRYAN ZIMMERMAN, as Adm'r of the Estate of Dale R. Zimmerman, Deceased, Plaintiff-Appellant, v. FASCO MILLS COMPANY *et al.*, Defendants-Appellees.

Second District    No. 2—98—0345

Opinion filed December 30, 1998.

Rodney W. Kimes, of Bolgrien, Rentz, Mineau, Koepke & Kimes, S.C., of Beloit, Wisconsin, for appellant.

Karen L. Kendall, Douglas J. Pomatto, and Mark J. McClenathan, all of Heyl, Royster, Voelker & Allen, P.C., of Rockford, for appellee Fasco Mills Company.

John J. Holevas, Brendan A. Maher, and Troy E. Haggestad, all of Williams & McCarthy, of Rockford, for appellee Stickle Enterprises, Ltd.

JUSTICE RAPP delivered the opinion of the court:

Plaintiff, Bryan Zimmerman, administrator of the estate of Dale

R. Zimmerman (Zimmerman), deceased, filed several successive complaints against defendants, Fasco Mills Company (Fasco Mills) and Stickle Enterprises, Ltd. (Stickle), under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 1994)) as a result of his father's death. The circuit court of Winnebago County dismissed plaintiff's fourth amended complaint pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1994)) because the trial judge found that the "fireman's rule" barred a cause of action on all eight counts of the complaint. Plaintiff argues on appeal that (1) the fireman's rule is inapplicable to the facts in the present case; and (2) the court committed error by not granting plaintiff's request to hold a pleading conference under Supreme Court Rule 218 (166 Ill. 2d R. 218). We reverse and remand.

## FACTS

Zimmerman was a volunteer firefighter for the Pecatonica Fire Protection District. On January 13, 1996, Zimmerman responded to a call of "men down" at a grain bin owned and operated by Fasco Mills in Seward, Illinois. Two men were trapped inside the grain bin. Stickle was employed by Fasco Mills on that day to evacuate the grain bin. Plaintiff alleged that both defendants were responsible for the supervision, control, and maintenance of the grain bin.

When he arrived at the scene, Zimmerman climbed the ladders on the outside of the grain bin to reach the only entrance to the interior of the bin. The entrance is a hole at the top of the bin near a ladder affixed to the interior wall of the bin. Zimmerman descended into the grain bin using the ladder affixed to the inner wall.

After entering the bin, Zimmerman became lethargic and was physically unable to climb the ladder to exit the bin. Members of the Pecatonica Fire Protection District attempted, without success, to hoist Zimmerman from the inside of the bin using a rope tied to the ladder at the top of the bin. Zimmerman was overcome by carbon monoxide gas while inside the grain bin and later died of asphyxia due to acute carbon monoxide poisoning.

Plaintiff, Zimmerman's son, as administrator of decedent's estate, filed his original complaint on July 26, 1996, which the trial court dismissed because of the fireman's rule. Plaintiff unsuccessfully attempted several times to amend his complaint to allege facts outside the fireman's rule. On October 3, 1997, the court ultimately dismissed plaintiff's fourth amended complaint with prejudice under section 2—619(a)(9). On February 26, 1998, the court denied plaintiff's motion to reconsider and plaintiff timely filed his notice of appeal.

In his fourth amended complaint, plaintiff alleged that Stickle and

Fasco Mills acted negligently and wilfully and wantonly, by introducing 5 million cubic feet of carbon dioxide into the bin before Zimmerman's entry and by failing to warn Zimmerman of the hidden and latent defects on the premises. Plaintiff alleged that in 1982 Alan Spratt was killed in the grain bin under similar circumstances. Plaintiff further alleged that Fasco Mills and Stickle failed to supply various equipment necessary for the safe ingress to and egress from the bin as required by federal, state, and local laws. Plaintiff also alleged that defendants failed to test the atmosphere and ventilate the bin, in violation of several ordinances and statutes.

## DISCUSSION

■ The trial court dismissed plaintiff's fourth amended complaint under section 2—619(a)(9) of the Code of Civil Procedure. Section 2—619(a)(9) permits involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 1994). Thus, the moving party admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the claim. *Brock v. Anderson Road Ass'n*, 287 Ill. App. 3d 16, 21 (1997). In the present case, the court found that the fireman's rule prohibited plaintiff's cause of action.

We review *de novo* the granting of a section 2—619 motion to dismiss. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997). For purposes of a section 2—619 motion to dismiss, all well-pleaded facts in the complaint are deemed admitted, and only the legal sufficiency of the complaint is at issue. *Brock*, 287 Ill. App. 3d at 21. The issue on appeal is whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of material fact, whether dismissal was proper as a matter of law. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115-16 (1993). The specific issue before this court is whether plaintiff alleged a cause of action, assuming his well-pleaded facts are true, that could have existed outside the contours of the fireman's rule.

■ The fireman's rule essentially provides that "an owner or occupier of land must exercise reasonable care to prevent injury to firemen that might result from a cause independent of the fire, but has no duty to prevent injury resulting from the fire itself." *Vroegh v. J&M Forklift*, 165 Ill. 2d 523, 527 (1995). The rule itself derives from the traditional common-law rules of landowner/occupier liability (*Horn v. Urban Investment & Development Co.*, 166 Ill. App. 3d 62, 66 (1988)), and where the rule applies, it means that no duty is imposed by law (*Vroegh*, 165 Ill. 2d at 530). Although the present case does not involve

a fire, the fireman's rule may be applicable here because the rule is also construed in the context of the duty a landowner owes to an emergency worker. *Hedberg v. Mendino*, 218 Ill. App. 3d 1087, 1090 (1991).

The fireman's rule is a creature of case law, and thus it is necessary to analyze the important cases to understand and properly apply the rule. In *Dini v. Naiditch*, 20 Ill. 2d 406 (1960), the seminal case discussing the fireman's rule in Illinois, firefighters were injured when an improperly attached staircase in the defendant's building collapsed due to the fire. The plaintiffs also alleged that the defendant's negligence contributed to the fire by failing to provide fire doors or fire extinguishers, permitting the accumulation of trash and litter in the corridors, and storing flammable liquids in close proximity to the inadequately constructed wooden stairway where the fire was located.

The court noted that the law originally treated a firefighter who enters the premises in an emergency in the discharge of his duty as a licensee and that the owner or occupant only owed the fireman the duty to refrain from the infliction of wilful or intentional injury. *Dini*, 20 Ill. 2d at 413-14. But the court also examined the law in other jurisdictions and concluded that "to avoid extending what has been deemed a 'harsh rule' [citations], courts have held that firemen were entitled to be warned of 'hidden dangers' or 'unusual hazards' known to the landowner or occupant. [Citations.]" *Dini*, 20 Ill. 2d at 414. Thus, the court stated:

> "Inasmuch as firemen obviously confer on landowners economic and other benefits which are a recognized basis for imposing the common-law duty of reasonable care [citations], we would agree *** that an action should lie against a landowner for failure to exercise reasonable care in the maintenance of his property resulting in the injury or death of a fireman rightfully on the premises, fighting the fire at a place where he might reasonably be expected to be." *Dini*, 20 Ill. 2d at 416-17.

The court held, therefore, that the jury could have found that defendants failed to keep the premises in a reasonably safe condition and that the hazard of fire and loss of life fighting it were reasonably foreseeable. Consequently, the court abolished the previously harsh fireman's rule and held that the owner of a building has a duty to use reasonable care in the maintenance of his property for the protection of firefighters who are upon the premises fighting a fire.

Although *Dini* acknowledged that an owner or occupier owes a duty to firefighters to prevent unreasonably unsafe conditions, this holding was narrowed by subsequent decisions. For example, in *Netherton v. Arends*, 81 Ill. App. 2d 391 (1967), the court noted that

negligent acts or omissions of an owner or occupier frequently cause fires and held that an owner or occupier who negligently creates a fire is not liable to a firefighter for injuries received in the performance of his duties. *Netherton*, 81 Ill. App. 2d at 394-95. The court stated that the "duty of an owner or occupant of premises to an invitee fireman is a duty to warn of known latent defects in the premises which with a reasonable degree of forseeability might cause injury to him." *Netherton*, 81 Ill. App. 2d at 396.

Similarly, in *Erickson v. Toledo, Peoria & Western R.R.*, 21 Ill. App. 3d 546 (1974), the court held that a firefighter injured while fighting a fire caused by a train derailment does not have a cause of action in negligence when the injury was caused by the plaintiff's actions in fighting the fire. The court stated that, traditionally, a landowner is absolved from liability for injuries suffered by a fireman while the fireman is acting within scope of his duties, but owners will be liable "where negligent conduct creates 'undue risks of injury beyond those inevitably involved in fire fighting.'" *Erickson*, 21 Ill. App. 3d at 548, quoting *Krauth v. Geller*, 31 N.J. 270, 273-74, 157 A.2d 129, 131 (1960).

In *Horcher v. Guerin*, 94 Ill. App. 2d 244 (1968), a firefighter who broke a window in order to ventilate a burning building was struck by a splinter of glass and lost his sight in one eye. This court held that the defendant was not liable for the plaintiff's injuries because an owner does not owe a duty to firefighters to prevent fire on his premises. *Horcher*, 94 Ill. App. 2d at 248. As we stated, because the nature of a firefighter's job exposes him to a reasonable risk of harm from fire, the landowner only owes a duty not to expose the firefighter to an unreasonable risk of harm—"that is, a duty to remove hidden, unusual or not to be expected dangers from the premises, or to give adequate warning thereof." *Horcher*, 94 Ill. App. 2d at 248.

In *Washington v. Atlantic Richfield Co.*, 66 Ill. 2d 103 (1976), a firefighter was seriously injured while fighting a fire at a gasoline filling station. Here, a faulty gasoline pump allowed gas to spill outside a car's tank and a customer at the filling station carelessly threw a match into the gas. Because the plaintiff's allegations of the owner's negligence related to the cause of the fire, the court declined to find the owner liable. The court stated that firefighters assume the risks normally associated with the occupation when they fight a fire, but they do not assume the risks created by other acts of negligence perpetuated by a landowner. *Washington*, 66 Ill. 2d at 109. The court held, therefore, "that while a landowner owes a duty of reasonable care to maintain his property so as to prevent injury occurring to a fireman from a cause independent of the fire he is not liable for negligence in causing the fire itself." *Washington*, 66 Ill. 2d at 108.

In *Hedberg*, the court found that the plaintiff was injured by a cause independent of the "fire." Here, a police officer acting in response to a call regarding a prowler was injured when he tripped over a depressed and defective portion of the sidewalk leading to the premises. The court stated "fire fighters do not assume those risks that are hidden from or unanticipated by the fire fighters." *Hedberg*, 218 Ill. App. 3d at 1090. Thus, the court held that a firefighter may not recover damages from a landowner if his injury is caused by an apparent risk but may recover if his injury is caused by an unanticipated risk attributable to the landowner's negligence and such negligence is the proximate cause of the injury. *Hedberg*, 218 Ill. App. 3d at 1090-91. Here, because the injury arose from a cause independent of the reason the police officer was called to the premises, the fireman's rule did not bar recovery.

On the other hand, it was held that no cause of action was stated in *Coglianese v. Mark Twain Ltd. Partnership*, 171 Ill. App. 3d 1 (1988), and *Luetje v. Corsini*, 126 Ill. App. 3d 74 (1984). In *Coglianese*, the reviewing court affirmed the dismissal of the complaint wherein the plaintiff, the administrator of the estate of a deceased firefighter, alleged that the firefighter was overcome by smoke, soot, and noxious gases emitted by the burning building's interior walls that were constructed with material that was not fire retardant. The dismissal of the complaint was also affirmed in *Luetje*, where the plaintiff firefighter was injured when part of the chimney fell from the burning building because of the fire. In both cases, the courts found that the injuries suffered were not caused by circumstances independent of the fire but rather were part of the risk normally associated with the fire-fighting profession.

As illustrated above, the cases that followed *Dini* have evolved the fireman's rule to limit recovery to those instances where the landowner or occupier breached his duty of care by failing to protect fire-fighters from dangerous conditions, *independent of the fire*, that constitute an unreasonable risk of harm, which the landowner should expect the invitee will not discover or realize or will fail to protect himself against. See *Briones v. Mobil Oil Corp.*, 150 Ill. App. 3d 41, 44 (1986). A landowner is not liable, however, for negligence that caused the fire or the other emergency that brought the firefighter or public official onto the property. *McShane v. Chicago Investment Corp.*, 235 Ill. App. 3d 860, 865 (1992). Acting within the scope of his duties, the firefighter accepts the risk of injury caused by a fire, although the firefighter does not assume the risk of injury by causes unrelated to the fire. *McShane*, 235 Ill. App. 3d at 865.

■ Turning to the facts of the present situation, this plaintiff is

now on his fourth amended complaint. It consists of eight counts and covers 103 pages. Throughout the various counts there is much surplusage that either repeats or expands upon other allegations. The trial judge indicated, when he dismissed the prior amended complaints, that he believed that a proper pleading could be made under these alleged facts to abrogate the fireman's rule. He pointed to stating the appropriate duty and reciting the particular independent act of negligence. We now examine the fourth amended complaint to see if, among the allegations made, appropriate causes of action were alleged.

Plaintiff essentially pleads that defendants negligently and wilfully and wantonly pumped 5 million cubic feet of carbon dioxide into the grain bin and, in violation of several regulations and ordinances, negligently and wilfully and wantonly failed to test the atmosphere within the bin, failed to ventilate the unsafe conditions within the bin, and failed to provide required safety and rescue equipment at the bin. Plaintiff further alleges that defendants knew of the dangerous condition of the bin before Zimmerman ever came to the bin, because in 1982 Alan Spratt died inside the bin under similar conditions. Plaintiff pleaded that Zimmerman was overcome by carbon monoxide gas while inside the grain bin and later died of asphyxia due to acute carbon monoxide poisoning.

Applying the fireman's rule to the plaintiff's complaint, we note that the "fire," or the reason Zimmerman came to the bin in the course of his duties, was the carbon monoxide level that caused the injuries to the workers inside the bin. Plaintiff alleges that the level of carbon monoxide killed Zimmerman and that defendants created this deadly condition by pumping 5 million cubic feet of carbon dioxide into the bin. As the fireman's rule prohibits recovery for negligently causing a "fire," plaintiff is barred from recovering for the defendants' negligence in causing the carbon monoxide level. Comparing this to the case law discussed herein, we find that the defendants' pumping of carbon dioxide into the bin is somewhat akin to the defective gas pump in *Washington* or the fallen chimney in *Leutje*.

The fireman's rule also imposes the duty to warn against latent dangerous conditions constituting an unreasonable risk of harm that the owner or occupier should expect the firefighter will not discover or will fail to protect himself against. Here, the deadly level of carbon monoxide, a very toxic, colorless and odorless gas (see Webster's Third New International Dictionary 336 (1993)), was a latent unreasonable risk. Because plaintiff pleaded that Zimmerman did not know of the bin's internal environment and that defendants knew or should have known of the gas and failed to warn Zimmerman, we have an allegation of latent danger with knowledge on the part of the defendants

and ignorance on the decedent's part. Defendants, therefore, owed a duty to warn Zimmerman of the latent danger and the fireman's rule is inapplicable.

While the carbon monoxide was the "fire," or the reason for Zimmerman's presence at the bin, we find that it is unlike a fire for purposes of the fireman's rule. Because a firefighter is unable to discern the immediate threat in the grain bin, unlike a fire, public policy dictates that, if defendants knew or should have known of this unforeseen danger, the defendants are liable for failing to warn a firefighter of this invisible risk.

In *Duncan v. Rzonca*, 133 Ill. App. 3d 184 (1985), a police officer was injured in an automobile accident during an emergency response to a false robbery alarm at a bank. The plaintiff alleged in his complaint that the false alarm was activated by a three-year-old who had activated the alarm previously. Noting the policy goals the fireman's rule serves, the court acknowledged that "[a] police officer responding to an emergency is subject to risk of harm every day, but society is willing to bear that risk in light of the social need served. The risk becomes socially intolerable and unreasonable when no social need for it exists, particularly when the means of guarding against the risk are eminently available and easily accomplished." *Duncan*, 133 Ill. App. 3d at 201.

In *Duncan*, the defendant need only have controlled her three-year-old son for the short time she was in the bank, and she had knowledge of his actions because he previously activated the alarm. Concluding that the fireman's rule was not applicable, the court emphasized the fact that the police officer was not injured in the course of the robbery; rather, he was injured in a collision responding to an allegedly negligently activated false alarm. *Duncan*, 133 Ill. App. 3d at 202. The court noted, however, that when a judge determines whether to impose a duty upon a defendant "[t]he judge's function in a duty determination involves complex considerations of legal and social policies [citation]; the imposition and scope of a legal duty is dependent not only on the factor of foreseeability but includes consideration of the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden upon the defendant." *Duncan*, 133 Ill. App. 3d at 192.

In the present case, the policy factors outlined in *Duncan* favor imposing a burden upon defendants here. The injury to Zimmerman was not only foreseeable to defendants, but also they were aware of the dangers because of the death to Spratt years before under similar conditions. In fact, the injury was likely considering that defendants made no effort to increase safety at the bin after Spratt's death. The

magnitude of the duty imposed on defendants is merely to warn firefighters and rescue workers of the unknown dangers present in the bin. This is similar to *Duncan,* where the court noted that the injury could have been prevented if only the mother had supervised the child more closely and prevented him from pressing the alarm. Here, all defendants needed to do was to warn Zimmerman of the dangerous environment inside the bin.

Under these facts, therefore, policy necessitates that defendants inform firefighters of the danger present because the risk is unknown to and undetectable by firefighters. We should not insulate owners and occupiers from liability when their silence causes the needless deaths of rescue operators. While we acknowledge the purpose of the fireman's rule has always been to protect owners from their negligence in creating the situation to which the firefighter responded, the rule does not protect an owner when the risk, as in this situation, is unreasonable and unknown to the firefighter. Consequently, we determine that the fireman's rule is inapplicable on these facts.

■ Significantly, plaintiff also alleges that defendants knowingly violated federal, state, and local regulations by failing to follow several safety precautions that would have helped to ensure Zimmerman's safe egress from the grain bin. Specifically, it is alleged that defendants were required to provide a chest or full body harness with a retrieval line, a boatswains chair, or a mechanical device to retrieve personnel from the bin. We find that defendants' failure to provide these items of safety equipment, coupled with the flagrant violation of safety regulations, created a separate dangerous condition for Zimmerman, independent of the level of carbon monoxide in the bin, thereby removing this alleged cause of action from the parameters of the fireman's rule.

The present case is analogous to *Harris v. Chicago Housing Authority,* 235 Ill. App. 3d 276 (1992), and *McShane v. Chicago Investment Corp.,* 235 Ill. App. 3d 860 (1992). In *Harris,* the plaintiff, a firefighter, was permanently injured while responding to a fire at a Chicago high-rise housing project. The plaintiff alleged that because of dysfunctional standpipes, which did not produce any water to douse the fire, he was injured by a buildup of heat and gases that created an explosion. The court found that the additional element in this case was the lack of water, which is another force or agency which a fireman would reasonably expect to be available. *Harris,* 235 Ill. App. 3d at 279.

Analogizing to the independent act of negligence in *Dini,* the court stated that it construed an explosion to be an extra intervening force set into motion by defendant's negligence. *Harris,* 235 Ill. App. 3d at 280. The court also found it significant that, as in *Dini,* the defendants

were in violation of several municipal fire safety ordinances. *Harris*, 235 Ill. App. 3d at 280. Ultimately, the court held that the housing authority's failure to maintain operable water standpipes, in violation of a municipal ordinance, if proved, was an act of negligence, independent of the cause of the fire. *Harris*, 235 Ill. App. 3d at 280. The court added that "[t]oo strict a construction of the 'fireman's rule' in this case would invite municipal corporations to flagrantly violate public safety ordinances." *Harris*, 235 Ill. App. 3d at 280.

In *McShane*, two firefighters were injured and two died when acting in response to a fire on the twenty-fifth floor of a high-rise building. The complaint alleged that firefighters were injured/killed because of defects in an elevator that the firefighters were forced to use, and because of the twenty-fifth floor's design and lack of illuminated emergency exit signs.

The court noted that in the high-rise situation elevators must be utilized by firefighters to reach the fire scene despite the fact that elevators are inherently dangerous during a fire. *McShane*, 235 Ill. App. 3d at 870. Thus, for a firefighter to hurdle the fireman's rule in such a situation, he must prove that any alleged defects in the elevator were unrelated to the fire. *McShane*, 235 Ill. App. 3d at 870. This is because an elevator's failure to operate correctly during a fire is one of the risks inevitably faced by a firefighter in a high-rise situation. *McShane*, 235 Ill. App. 3d at 870. Ultimately, the court found the defective alarm bell and the disconnected emergency telephone to be evidence of negligence that made the building unreasonably unsafe.

Moreover, the court concluded that the design of the twenty-fifth floor, in violation of city ordinances, and the lack of signage made the building unreasonably unsafe and that the cited defects formed a proper basis for finding the defendants negligent. The court refused to apply the fireman's rule because the design defects were not caused by the fire and were not fire related. Furthermore, relying on *Harris*, the court stated that "to ignore city code violations which were adopted to promote public safety would encourage their continued violation." *McShane*, 235 Ill. App. 3d at 875.

As in both *McShane* and *Harris*, Fasco Mills and Stickle failed to provide the necessary safety equipment. Similar to a malfunctioning standpipe or a lack of emergency exits signs, the defendants' failure to provide equipment to ensure safe egress from the grain bin is an act of negligence, independent of the cause of the "fire," or the pumping of carbon dioxide in the bin.

Moreover, by failing to provide the necessary safety equipment, the defendants acted in blatant disregard for safety laws enacted for the protection of firefighters, rescue workers, and grain bin employees.

Again, as *McShane* and *Harris* stated, to allow defendants to violate these laws encourages their continued violation and can only result in more unnecessary fatalities.

We hold, therefore, that in the specific factual contours of this case, as plaintiff alleges, the defendants' failure to warn Zimmerman of the latent risk in the bin and the defendants' failure to provide the safety equipment mandated by law created an unreasonably unsafe risk, independent of the reason for Zimmerman's presence in the bin. Consequently, we find that plaintiff's cause of action is not barred by the fireman's rule.

■ Plaintiff also contends that the court committed error by not granting plaintiff's request to hold a pleading conference pursuant to Supreme Court Rule 218 (166 Ill. 2d R. 218). Having already reversed the trial court's dismissal of plaintiff's claim, we decline to discuss this issue. We only note that a Rule 218 pleading conference is not required, nor is it a forum for the parties to be educated regarding the infirmities of their pleadings.

## CONCLUSION

Therefore, for the foregoing reasons, the judgment of the circuit court of Winnebago County dismissing this cause pursuant to the "fireman's rule" is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

McLAREN and COLWELL, JJ., concur.