ANGELINA TORRES, Special Adm'r of the Estate of Hector Rivera, Deceased, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (6th Division)   No. 1—03—0357

Opinion filed September 17, 2004.

Christopher T. Hurley & Associates, of Chicago (Christopher T. Hurley and Mark R. McKenna, of counsel), for appellant.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Sara K. Hornstra, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

On July 24, 1998, police officers responded to a call to 911 reporting a shooting. When officers arrived at the scene shortly after 2 a.m., Hector Rivera was lying on a bathroom floor, bleeding from multiple gunshot wounds. Police called for an ambulance for Rivera an hour and a half later. Rivera died that morning. Angelina Torres, as special administrator of Rivera's estate, sued the City of Chicago (the City) for wrongful death. The trial court granted the City's motion for summary judgment, finding that the City and its officers owed no duty to Rivera. Torres appeals.

Assuming that the City had no duty to respond to the 911 call, we hold that the City voluntarily undertook the response, and at that

point it assumed a duty not to harm Rivera. Torres presented evidence that the City breached that duty when its officers told at least one person who sought to help Rivera to leave the area. Section 4—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/4—102 (West 1998)) does not apply here because Rivera needed those responding to the 911 call to provide medical care, not police protection or services. We find that Torres presented sufficient evidence to withstand the motion for summary judgment.

Because the trial court granted the City's motion for summary judgment, we state the facts supported by the record in the light most favorable to Torres. The City's 911 service received at least five calls reporting persons shot near a specified intersection. Officers responding to the calls found two persons outside an apartment building at that location with gunshot wounds. The officers called for two ambulances and both arrived and took away the two injured persons within minutes. Witnesses at the scene told police that a third person also had been shot. An officer told one such witness, a neighbor, "Don't worry about it. Get out of this area." When the neighbor repeated that another man was wounded, the officer again told the neighbor to leave. Another witness told the officers that a man with gunshot wounds was in a bathroom in the witness's apartment. Officers told the man to wait because they needed to take pictures of the scene. A trail of blood marked the stairs and led to the bathroom where Rivera lay bleeding.

An officer found Rivera alive in the bathroom, but he left him there because Rivera appeared drunk. Sometime later a witness took another officer into the bathroom. The witness lifted Rivera's shirt and showed the officer the bullet wound. The officer then called for an ambulance, dispatched at 3:33 a.m. Rivera died before 7 a.m. that day. A doctor who reviewed the medical records opined that if Rivera had received treatment within an hour of the shooting, "his chances of survival would have been increased *** by at least 50%."

Torres, in her complaint, alleged that the willful and wanton conduct of the officers increased Rivera's suffering and caused his death. She also claimed that the City deprived Rivera of equal protection of the laws. The City removed the case to federal court. The federal court denied the City's motion to dismiss the complaint (*Torres v. City of Chicago*, 123 F. Supp. 2d 1130, 1136 (N.D. Ill. 2000)), but later the court entered judgment in favor of the City on the claim that it deprived Rivera of equal protection of the law. The court remanded the state-law claims to the circuit court of Cook County.

The circuit court held that the City had only a duty to the public, and no duty to Rivera, to respond to the 911 call. Because Torres

presented no evidence of breach of any enforceable duty, the court granted the City summary judgment.

## ANALYSIS

The Illinois Constitution of 1970 abolished the doctrine of sovereign immunity, "[e]xcept as the General Assembly may provide by law." Ill. Const. 1970, art. XIII, § 4. Thus, the City has the same liability as a private tortfeasor unless statutory immunities apply. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 345 (1998). For purposes of this opinion, we assume that the City had no enforceable duty to respond to the 911 call. Private persons with no duty to another may nonetheless incur liability when they voluntarily undertake to aid another and they do so negligently. *Wakulich v. Mraz*, 203 Ill. 2d 223, 243 (2003).

The court in *Wakulich* adopted section 323 of the Restatement (Second) of Torts, which establishes that one who voluntarily undertakes to render necessary services to another "is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if *** his failure to exercise such care increases the risk of such harm." Restatement (Second) of Torts § 323, at 135 (1965). The court explained, "where a defendant delays in sending for aid and the other person's condition worsens, resulting in his or her death, the defendant may be liable under a wrongful death statute." *Wakulich*, 203 Ill. 2d at 244-45.

Here, the evidence taken in the light most favorable to Torres shows that the City responded to the 911 call by dispatching officers to assist the injured and to investigate the crime. A neighbor who wanted to help the injured told police about Rivera. Police told the neighbor not to worry about the injured and to leave the area. If police had not arrived and deterred the neighbor from assisting Rivera, Rivera may have gotten the medical treatment he needed much sooner. A doctor swore that the delay of more than an hour substantially decreased Rivera's chance of survival. Thus, Torres has presented evidence from which a finder of fact could conclude that the City's failure to exercise reasonable care in responding to the emergency call increased the risk of harm to Rivera. See *Russell v. City of Columbia*, 305 S.C. 86, 406 S.E.2d 338 (1991) (city liable where its officers told persons providing aid to leave the victim with them). Because the City voluntarily undertook responsibility for aiding the victims of the shooting, the City may be liable for the negligence of its officers unless tort immunities apply.

The City argues that section 4—102 of the Act gives them absolute immunity for the acts alleged. Section 4—102 provides:

"Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals." 745 ILCS 10/4—102 (West 1998).

In federal court the City raised the same argument as the basis for its motion to dismiss the complaint. The federal court rejected the argument, holding that the complaint involved a failure to provide emergency medical care rather than "police protection or service." 745 ILCS 10/4—102 (West 1998); *Torres*, 123 F. Supp. 2d at 1135. We agree.

In the Act, "[t]he classification is in terms of the type of municipal function performed by the employees, rather than a classification among different governmental agencies that perform the same function." *Arnolt v. City of Highland Park*, 52 Ill. 2d 27, 34 (1972). "[I]mmunity under § 4—102 attaches to 'police services,' not police departments. By its terms § 4—102 applies to all local public entities and public employees ***." *McLellan v. City of Chicago Heights*, 61 F.3d 577, 578 (7th Cir. 1995). Thus, when firemen performed the police service of crowd control, section 4—102 immunity protected them from liability. *McLellan*, 61 F.3d at 578. "Police protection or service," within the meaning of section 4—102, includes crime prevention, crime investigation (*Towner v. Board of Education of the City of Chicago*, 275 Ill. App. 3d 1024, 1028 (1995)), crowd control (*Cadena v. Chicago Fireworks Manufacturing Co.*, 297 Ill. App. 3d 945, 952 (1998)), searching for missing persons (*Platacis v. Village of Streamwood*, 224 Ill. App. 3d 336, 340 (1991)), and traffic control (*Kavanaugh v. Midwest Club, Inc.*, 164 Ill. App. 3d 213, 221 (1987)). The responsibility for obtaining medical aid for injured persons involves no service characteristic of police functions. *Regalado v. City of Chicago*, 40 F. Supp. 2d 1009, 1017 (N.D. Ill. 1999). Section 4—102 does not immunize the officers from liability for the conduct described in the complaint and the supporting depositions and affidavits.

The City voluntarily assumed a duty to the persons injured in the shooting when it responded to the 911 call. Torres presented evidence of willful and wanton misconduct in the police response, and a finder of fact could conclude that the misconduct harmed Rivera. Because section 4—102 of the Act does not immunize the City or the officers from liability for the conduct alleged, we must reverse the summary

judgment granted in favor of the City and remand for further proceedings consistent with this opinion.

Reversed and remanded.

O'MARA FROSSARD and TULLY, JJ., concur.