JAMES LURGIO, Plaintiff-Appellant, v. COMMONWEALTH EDISON COMPANY, Defendant-Appellee.

First District (4th Division)   No. 1—08—0612

Opinion filed August 27, 2009.

Costello, McMahon & Burke, Ltd., of Chicago (Richard F. Egan, of counsel), for appellant.

Swanson, Martin & Bell, LLP, of Chicago (Kevin V. Boyle and Catherine Basque Weiler, of counsel), for appellee.

JUSTICE GALLAGHER delivered the opinion of the court:

In this personal injury lawsuit, plaintiff James Lurgio appeals the trial court's order granting summary judgment in defendant Commonwealth Edison Company's favor. Plaintiff, who is a police officer, was injured when he ran away from an explosion that occurred when defendant's downed power line came in contact with a streetlight. On appeal, plaintiff contends that the trial court erred in granting defendant's summary judgment motion because a genuine issue of material fact exists as to whether defendant breached a duty owed to plaintiff to respond to the downed power line with due care. Plaintiff claims that the trial court erred in applying the fireman's rule to find that defendant did not owe a duty to plaintiff because the rule only applies to owners or occupiers of land and defendant was neither. Plaintiff also claims that by providing an estimated time of arrival (ETA), defendant voluntarily assumed a duty to respond to the downed power line within the ETA. Plaintiff further claims that the trial court erred in finding as a matter of law that defendant's alleged negligence was not the proximate cause of his injury. For the reasons stated below, we reverse and remand for further proceedings.

## BACKGROUND

Defendant owns and operates the electrical power lines attached to a streetlight located on the northwest corner of Riverside Drive and West Joliet Road in the Village of McCook. On May 12, 2003, the Village of McCook police department received a report that defendant's power line was down in the parking lot of a restaurant and truck stop

near the intersection of Riverside Drive and West Joliet Road. A portion of defendant's power line was hanging near a streetlight and a restaurant sign and the rest of the power line was on top of a car in the restaurant's parking lot.

After notifying the fire department, the Village of McCook dispatcher then notified defendant about the downed power line at approximately 9:23 a.m. Defendant provided the dispatcher with a 45-minute ETA, positioning defendant to arrive at the scene at approximately 10:08 a.m.

Dispatched to secure the scene and wait for defendant's arrival, plaintiff arrived at the scene at approximately 9:45 a.m. Once at the scene, plaintiff directed traffic on the opposite side of the intersection from the downed power line, which was approximately 300 to 400 feet away.

At approximately 10:15 a.m., the downed power line came in contact with a streetlight, creating a loud explosion and causing the streetlight to collapse. Plaintiff ran away from the explosion, injuring his knee.

Village of McCook police records indicate that defendant arrived on the scene at approximately 11 a.m. The Village's fire department turned the scene over to defendant sometime after 11:30 a.m., and then defendant terminated the source of the electrical power.

On February 28, 2005, Plaintiff brought an action against defendant for personal injuries resulting from defendant's alleged negligence in maintaining, installing, or supervising the installation of its power lines and alleged negligence in failing to properly respond to a downed power line in a timely and expedited manner. Specifically, plaintiff alleged that defendant failed to terminate the source of electrical power for the downed power line in a reasonable amount of time. Defendant denied all allegations of negligence and filed a motion for summary judgment on February 28, 2007.

During his deposition, plaintiff testified that although he knew to stay away from downed power lines, he had not received any formal training regarding how to respond to a downed power line.

McCook Police Chief Frank Wolfe testified during his deposition that he also received no formal training regarding downed power lines. He testified, however, that he had some informal training regarding how to respond to a downed power line. Officer Wolfe knew to stay away from the power line and to assist the fire department in securing the area until the electrical power company arrived at the scene. Officer Wolfe elaborated that the police were to evacuate and keep people out of the area.

McCook Fire Chief Joseph Myrick testified during his deposition that in responding to downed power lines, dispatch informs defendant by telephone and asks them for an ETA. He testified that defendant does not always provide an ETA. Meanwhile, the fire department secures the area and waits for defendant to arrive at the scene. The police department assists the fire department in securing the area and by providing traffic control. Once defendant arrives, the fire department turns the scene over to defendant.

Using the police report, McCook fire department Deputy Chief John James testified during his deposition that defendant did not arrive at the scene until approximately 11 a.m. He also testified that the weather was "normal," which was approximately 59 degrees Fahrenheit with winds northwest at 17 miles an hour.

During his deposition, defendant's line technician Joseph Dause testified that when he gives an ETA to the dispatcher, it is based on numerous factors, such as the time of day, traffic conditions, and other repair activities. He also testified that on the day of the occurrence, he was operating under a storm situation.

On August 28, 2007, the trial court granted defendant's motion for summary judgment. After receiving an extension of time from the trial court, plaintiff filed a motion to reconsider on October 29, 2007. Plaintiff filed a reply to defendant's motion in opposition of the motion for reconsideration. On February 6, 2008, the trial court denied plaintiff's motion to reconsider. Plaintiff timely appealed.

## ANALYSIS

This court reviews an order granting summary judgment *de novo*. *Judge-Zeit v. General Parking Corp.*, 376 Ill. App. 3d 573, 578, 875 N.E.2d 1209, 1214 (2007). Summary judgment "shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2006). Construing the evidence in a light most favorable to the nonmoving party, a trial court may only grant summary judgment if the record shows that the movant's right to relief is clear and free from doubt. *Judge-Zeit*, 376 Ill. App. 3d at 579, 875 N.E.2d at 1214.

On appeal, plaintiff argues that defendant owed him a duty as a matter of law to respond to the scene of a downed power line and terminate the source of the electrical power in a timely and expedited manner. Plaintiff contends that a genuine issue of material fact exists as to whether defendant breached that duty, which would give rise to a negligence claim. Plaintiff also contends that defendant did not

demonstrate that it is entitled to judgment as a matter of law. Therefore, plaintiff claims that the trial court erred in granting summary judgment in defendant's favor.

A negligence cause of action requires a plaintiff to prove the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. *Bally v. Pora*, 303 Ill. App. 3d 239, 242, 706 N.E.2d 1038, 1040 (1999). Whether a duty of care exists is a question of law to be determined by the court. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430, 856 N.E.2d 1048, 1053-54 (2006). A duty of care arises when the nature of the plaintiff and defendant's relationship to one another is such that the law imposes upon the defendant an obligation of reasonable conduct for the plaintiff's benefit. *Marshall*, 222 Ill. 2d at 436, 856 N.E.2d at 1057.

We begin our analysis by determining whether defendant owed plaintiff a duty of care. Given the unique nature of the electrical business and the hazardous enterprise of distributing electrical energy, the Illinois Supreme Court has determined that electrical utility companies possess a high degree of care regarding its electrical wires. *McGill v. Illinois Power Co.*, 18 Ill. 2d 242, 245, 163 N.E.2d 454, 456 (1959); see *Haberman v. Commonwealth Edison Co.*, 84 Ill. App. 3d 475, 480, 405 N.E.2d 830, 834 (1980). Although electrical utility companies are not absolute insurers of public safety, they possess a duty to properly place and properly insulate electrical wires when individuals may reasonably come into close proximity to those lines. *Nelson v. Commonwealth Edison Co.*, 124 Ill. App. 3d 655, 666-67, 465 N.E.2d 513, 521-22 (1984); see *German v. Illinois Power Co.*, 115 Ill. App. 3d 977, 982-84, 451 N.E.2d 903, 906-07 (1983). Upon receiving notice that a power line was down, defendant agreed to arrive at the scene and shut off the electric current. Due to the nature of defendant's business, defendant had a duty of care to avert the peril associated with its downed electrical line. Although defendant did shut off the power, whether defendant did so in a reasonable and timely manner is a question for a jury to decide.

A negligence analysis must still turn to whether the duty underlying plaintiff's claim is barred by the fireman's rule and risks inherent in plaintiff's employment as a police officer. Defendant claims that as a police officer, plaintiff was aware that a live power line was dangerous and encountered the risks associated with a live line through the ordinary discharge of his duties. Defendant maintains that the danger plaintiff faced with the downed line was inherent in his police work and that the danger was known to plaintiff and other police officers. Defendant claims that it did not owe plaintiff a duty of care because of his position as a police officer and, thus, is entitled to judgment as a

matter of law. As such, defendant maintains that the trial court did not err in granting summary judgment in its favor based on an application of the fireman's rule.

■ According to the fireman's rule, public officers may not recover for injuries sustained during an emergency when they enter upon an owner or occupier's property in the discharge of their duties. *Randich v. Pirtano Construction Co.*, 346 Ill. App. 3d 414, 418-19, 804 N.E.2d 581, 585 (2004); *Bally*, 303 Ill. App. 3d at 242, 706 N.E.2d at 1041. In essence, the fireman's rule permits recovery "for injuries that result from an act unrelated to the specific reason he was summoned to the scene, but not for negligent acts that caused the emergency." *Randich*, 346 Ill. App. 3d at 420, 804 N.E.2d at 586. The rule limits liability because public officers receive specialized training to anticipate and encounter certain risks and hazards associated with their employment. *Bally*, 303 Ill. App. 3d at 243, 706 N.E.2d at 1041. A landowner or occupier must still, however, exercise reasonable care to maintain his property in a safe condition to prevent injury to public officers resulting from causes independent of the emergency that caused the public officer to arrive at the scene and enter the property. *Bally*, 303 Ill. App. 3d at 242, 706 N.E.2d at 1041. The rule strikes a balance between a public officer's assumption of the risk of harm from the danger inherent in his or her occupation with a landowner or occupier's duty to maintain his or her property in a reasonably safe condition. See *Randich*, 346 Ill. App. 3d at 425, 804 N.E.2d at 590. Although a public officer may recover for injuries resulting from acts unrelated to the specific reason he was summoned to the scene, he may not recover for injuries resulting from the negligent acts that caused the emergency. *Randich*, 346 Ill. App. 3d at 420, 804 N.E.2d at 586. When the fireman's rule applies, no duty is imposed by law. *Zimmerman v. Fasco Mills Co.*, 302 Ill. App. 3d 308, 311, 704 N.E.2d 949, 952 (1998).

■ Here, the fireman's rule does not apply because plaintiff's injury was independent from the alleged negligence that caused the emergency. Based upon the record before us, we cannot determine what negligence, if any, caused the downed power line creating the emergency. The parties, however, do not contest that plaintiff was allegedly injured fleeing from the explosion that occurred on the scene. This case is distinguishable from most Illinois cases determining whether the fireman's rule applies because defendant, as an electrical power distributor, had a legal duty to reasonably respond to the emergency created by its downed power line.

With this distinction in mind, we address the applicability of this court's holding in *Jackson v. Urban Investment Property Services*, 362

Ill. App. 3d 88, 839 N.E.2d 650 (2005), which was cited by both plaintiff and defendant. In *Jackson*, the plaintiff police officer was dispatched to manage the scene of falling scaffolding and was allegedly injured as a result of that same falling scaffolding. *Jackson*, 362 Ill. App. 3d at 89, 839 N.E.2d at 652. Applying the fireman's rule, the trial court found that the fireman's rule relieved the defendants of liability and entered summary judgment on behalf of the defendant theatre owner. *Jackson*, 362 Ill. App. 3d at 90, 839 N.E.2d at 652. On appeal, this court affirmed, holding that since the plaintiff sustained injuries in the course of her duties, the fireman's rule barred her from recovering for her injuries. *Jackson*, 362 Ill. App. 3d at 92-93, 839 N.E.2d at 654.

*Jackson* is distinguishable from the instant case. Just as the plaintiff in *Jackson* was dispatched to manage the scene of falling scaffolding and was injured by that falling scaffold, here, plaintiff was dispatched to manage the scene of a downed power line and was injured when that downed power line created an explosion causing plaintiff to flee the scene. However, in contrast to *Jackson*, plaintiff not only alleges that his injuries resulted from the prior negligent acts that caused him to be at the scene, but also alleges that his injury resulted from specific negligent acts occurring after he responded to the downed power line. Plaintiff contends that defendant's failure to respond to the downed power line in a timely manner caused his injury. Failing to remedy a dangerous condition with due care is negligence independent of the negligence that originally caused the dangerous condition, which acts as a superseding cause. By failing to respond to the downed power line in a reasonable manner, plaintiff claims, defendant unreasonably increased his exposure to the risk of physical injury beyond what is inherent in his duties as a police officer. Plaintiff was at the scene performing his assigned duty of directing traffic away from the downed power line. Assuming *arguendo* that plaintiff was injured by a car or as a result of some other risk inherent in his duties as a police officer directing traffic, then the fireman's rule or the risk inherent doctrine would apply to relieve the landowner or occupier of liability. Here, however, plaintiff claims he was injured fleeing from the explosion that occurred because the power to the downed power line was not timely shut off, which is a cause independent from the downed power line.

We find instructive this court's decision in *Duncan v. Rzonca*, 133 Ill. App. 3d 184, 478 N.E.2d 603 (1985). In *Duncan*, the plaintiff police officer was injured in a car accident while responding to a false bank alarm allegedly activated by a three-year-old child. *Duncan*, 133 Ill. App. 3d at 187, 478 N.E.2d at 604-05. The plaintiff brought a negligence claim against the defendant bank and the defendant mother

of the three-year-old child, alleging, among other things, a failure to notify the police department that the alarm was false to remedy a dangerous situation. *Duncan*, 133 Ill. App. 3d at 189, 478 N.E.2d at 605-06. The trial court granted the defendants' motions to dismiss because the plaintiff's injury was not foreseeable and the alleged negligence was not a proximate cause of the injury. *Duncan*, 133 Ill. App. 3d at 189-90, 478 N.E.2d at 606. Reversing on appeal, this court explained that although responding to an emergency situation creates a risk of harm inherent in police work, requiring a police officer to bear unnecessary risks that can be avoided by the exercise of due care is unreasonable. *Duncan*, 133 Ill. App. 3d at 194, 478 N.E.2d at 609. This court also held that the fireman's rule did not apply because "[p]laintiff here was not injured in the course of robbery of the bank" and the alarm's falsity heightened the risk that the plaintiff was exposed to and rendered the defendants' acts unreasonable. *Duncan*, 133 Ill. App. 3d at 202, 478 N.E.2d at 614.

Here, as in *Duncan*, plaintiff alleges that defendant exposed plaintiff to unnecessary risks that could have been avoided with the exercise of due care. Defendant was the only entity that could remedy the dangerous condition by timely shutting off the power. Moreover, defendant knew that police and fire personnel were standing by awaiting its arrival. By failing to respond sooner, plaintiff claims that defendant prolonged plaintiff's exposure to the risks associated with a downed power line. In this case, the policy reasons underlying the fireman's rule do not justify relieving defendant of its duty to reasonably protect plaintiff from the dangers of a downed power line. Therefore, the fireman's rule does not apply to relieve defendant of its legal duty to protect plaintiff from the downed power line. Whether the increased risk that plaintiff was exposed to was unreasonable and could have been avoided by the exercise of due care is an issue to be decided by the jury. Accordingly, the trial court erred in granting summary judgment in defendant's favor based on an application of the fireman's rule.

Plaintiff contends that because defendant was not a landowner or occupier of the land where the injury occurred, the trial court erred in applying the fireman's rule. Since we determined that the fireman's rule is inapplicable, we need not address plaintiff's contention.

■ We next address whether a negligence claim could be established under a traditional duty analysis. Plaintiff contends that given defendant's notice of an obviously dangerous situation and its awareness that police and fire personnel were standing by awaiting its arrival, plaintiff's injury was reasonably foreseeable and likely. Plaintiff claims that since defendant is the only entity that could turn the

power off and can do so from a remote location, the magnitude and consequences of placing a burden on defendant to respond with due care are slight. Therefore, plaintiff contends that under a traditional duty analysis, defendant owed plaintiff a duty to terminate the power within a reasonable time, which was breached by failing to arrive at the scene within the ETA.

Defendant responds that under a traditional duty analysis, defendant owed plaintiff no duty of care. Defendant claims that since plaintiff was injured fleeing from the scene and not by the explosion or as a result of the falling streetlight, plaintiff's injury was unforeseeable and unlikely. Defendant also claims that requiring it to arrive within the ETA would generate a tremendous and insurmountable burden that is both unfair and unreasonable.

Under a traditional duty analysis, a court considers four factors: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing the burden on the defendant." *Marshall*, 222 Ill. 2d at 436-37, 856 N.E.2d at 1057. In the instant case, application of the four factors supports a conclusion that a genuine issue of material fact exists regarding defendant's exercise of reasonable care in protecting plaintiff from the dangers of a downed power line.

The Village of McCook police department notified defendant that part of its electrical line was down on top of a vehicle while another part was dangling in the air surging with live electricity. Only defendant had the ability to shut the power off thereby remedying the dangerous condition. Plaintiff arrived at the scene to direct traffic away from the downed live electrical line. Combining the knowledge that defendant had that individuals were in close proximity to the live downed line with the potential harm that might result if a live line made contact with a conduit, plaintiff claims that defendant should have known that the potential for injury was likely and, too, that an emergency situation resulting in injuries was reasonably foreseeable. Defendant claims that plaintiff's injuries resulted from him running from the scene after the explosion, which was not a reasonably foreseeable reaction, and not from the explosion itself. Plaintiff's injury, however, was not so unforeseeable, unlikely or extreme an occurrence that as a policy decision it would be unwise to require defendant to guard against it. See *Duncan*, 133 Ill. App. 3d at 196, 478 N.E.2d at 610. A genuine issue of material fact exists whether it was foreseeable and likely that a live power line not immediately attended to may cause an explosion and that individuals in the vicinity of the explosion would flee the scene to safety, potentially injuring themselves.

Also, plaintiff claims that the magnitude of defendant's burden in reducing the risk of injury was slight since defendant allegedly had the ability to isolate electrical lines and shut off the power with a load dispatcher from a remote location. Plaintiff also claims that the consequences of placing the burden of guarding against the risk of harm on defendant would not have created undue costs or problems and would have been consistent with the increased duty defendant owed to the public as a provider of electricity. Plaintiff states that defendant was notified by 9:23 a.m. of a downed power line, which was recorded by 9:27 a.m., and an expedited response was requested to handle the downed line. Defendant provided an ETA of 45 minutes or at approximately 10:08 a.m. Plaintiff arrived at the scene at 9:45 a.m. The explosion occurred at approximately 10:15 a.m. Defendant arrived after the explosion. Plaintiff met its burden of establishing that defendant owed him a duty of care, but whether defendant responded to the downed power line in a reasonable and timely manner thereby not breaching the duty owed to plaintiff is a factual question to be decided by a fact finder at trial. See *Osborne v. Sprowls*, 84 Ill. 2d 390, 398, 419 N.E.2d 913, 917 (1981) (holding that the ultimate question whether the defendant in fact exercised due care is one for the jury). This court does not address the merits or probability of plaintiff's success in prevailing on a negligence claim premised on a traditional duty analysis but, instead, concludes that such a determination is best left for the fact finder after considering all of the evidence. The facts surrounding the timing of defendant's arrival at the scene are material and should be considered by the fact finder to determine whether defendant's actions under the facts of this case amounted to negligence.

## VOLUNTARY UNDERTAKING

Next, plaintiff contends that by providing the police department with a 45-minute ETA, defendant voluntarily assumed a duty to arrive at the scene of the downed power line on or before the given ETA to shut off the power. Defendant responds that its dispatcher provided the ETA only as a courtesy and that it did not voluntarily undertake a duty to arrive within the ETA. Defendant contends that its only voluntary undertaking was to act in a reasonably safe manner once it arrived at the scene of the downed power line, and since plaintiff does not allege that defendant was negligent once at the scene, plaintiff does not have a negligence claim based on a duty voluntarily assumed by defendant.

■ The Illinois Supreme Court has adopted section 323 of the Restatement (Second) of Torts, which establishes that one who

voluntarily undertakes to render necessary services to another "is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if \*\*\* his failure to exercise such care increases the risk of such harm." Restatement (Second) of Torts §323, at 135 (1965); *Torres v. City of Chicago*, 352 Ill. App. 3d 533, 535, 816 N.E.2d 816, 818 (2004), citing *Wakulich v. Mraz*, 203 Ill. 2d 223, 785 N.E.2d 843 (2003). However, the duty associated with a voluntary undertaking is limited to the extent of the undertaking. *Rice v. White*, 374 Ill. App. 3d 870, 886, 874 N.E.2d 132, 146 (2007).

In the instant case, plaintiff established a question of fact of whether defendant's failure to arrive at the scene on or before the given ETA to shut off the power increased the risk of harm to plaintiff. Because defendant voluntarily provided an ETA and did not arrive within that ETA, defendant may be liable for breaching its duty of care. Although we make no determination and express no opinion regarding the necessity of an electrical power distributor providing an ETA, when an ETA is provided but not complied with, the electrical power distributor's right to relief is not clear and free from doubt. We express no opinion as to whether failing to comply with an ETA amounts to negligence or is unreasonable because such a matter is for the jury to decide.

## PROXIMATE CAUSE OF INJURY

■ Plaintiff's next contention is that the question of proximate cause is a question of fact for the jury, and the trial court erred in finding as a matter of law that defendant's alleged negligence was not the proximate cause of his injury. Defendant responds that since its actions were not the cause in fact or the legal cause of plaintiff's injury, the court decided the proximate cause issue as a matter of law. Defendant contends that it was not the cause in fact of plaintiff's injury because plaintiff failed to present facts establishing that if defendant arrived at the scene within its ETA it could have secured the downed power line and prevented the explosion. Defendant also contends that it was not the legal cause of plaintiff's injuries because it was unforeseeable that plaintiff, a police officer who was standing away from the downed power line directing traffic, would injure himself when fleeing the scene. Defendant claims that it could not reasonably anticipate plaintiff's fleeing from the scene and injuring himself as a consequence of not arriving at the scene sooner.

Although proximate cause is generally a question of fact, a court may determine a lack of proximate cause as a matter of law where the

facts fail to establish both "cause in fact" and "legal cause." *Rice,* 374 Ill. App. 3d at 888, 874 N.E.2d at 148. A defendant's conduct is a "cause in fact" of the plaintiff's injury if the injury would not have occurred absent defendant's conduct. *Abrams v. City of Chicago,* 211 Ill. 2d 251, 258, 811 N.E.2d 670, 675 (2004). A defendant's conduct is a "legal cause" of a plaintiff's injury if a reasonable person would see the injury as a foreseeable or likely result of defendant's conduct. *Abrams,* 211 Ill. 2d at 258, 811 N.E.2d at 675.

In the instant case, although plaintiff was not injured directly by the downed power line, the inferences drawn from the facts alleged are not so undisputed to permit the court to decide as a matter of law the proximate cause of the plaintiff's injury. See *Duncan,* 133 Ill. App. 3d at 203-04, 478 N.E.2d at 615. A genuine issue of material fact exists as to whether plaintiff's injury would have occurred if defendant had responded to the downed power line sooner. Moreover, based on the facts presented, reasonable persons may see plaintiff's injury as a likely or foreseeable result of defendant's conduct. Accordingly, the trial court erred in determining the issue of proximate cause as a matter of law.

## OTHER ALLEGATIONS OF NEGLIGENCE

Lastly, plaintiff contends that the trial court erred in not addressing his claim that defendant's failure to maintain, install, or properly supervise the installation of its power lines, structures and/or property to prevent its detachment caused his injuries. Plaintiff claims that a genuine issue of material fact exists concerning defendant's maintenance of the power lines since a line came down and there was no indication that there was an "Act of God" or weather conditions causing the downed line. Defendant responds that plaintiff's argument is waived because he raises it for the first time on appeal. Waiver aside, defendant claims that conflicting evidence exists concerning the weather conditions at the time of the incident. Thus, defendant maintains that it cannot be presumed that plaintiff's injury would not have resulted absent defendant's negligence.

The trial court did not separately address plaintiff's contention that defendant failed to properly maintain, install, or properly supervise the installation of its power lines, structures, and/or property. Since the trial court did not rule upon such a contention, plaintiff's contention is not before this court and we will not independently decide this issue.

## CONCLUSION

For the reasons stated, we reverse the trial court's order granting

summary judgment in defendant's favor and remand for further proceedings.

Reversed; cause remanded.

O'BRIEN, P.J., and NEVILLE, J., concur.